The Honorable Jim Hill State Senator 100 Center Nashville, AR 71852-3821
Dear Senator Hill:
I am writing in response to your request for my opinion on several questions arising from the following reported facts:
 One school in my district, Murfreesboro, did not levy 25 mls. for maintenance and operation. At the school election in September, the ballot stated 23.9 for M O and 3.0 for dedicated M O. I had some conversations on this subject with the Superintendent of Schools in July, after we received letters from the Department of Education on this matter. The Superintendent informed us that he was in compliance because of the dedicated M O in November, before we levied taxes. We understood that the dedicated M O was a gray area in the law but that it could possibly be used to come to a total of 26.9 mills. We now understand that the law is clear that dedicated M O cannot be used to count for the 25 mls.
Against this backdrop, you have posed the following questions:
 1. Does the Quorum Court need to take any action since the Murfreesboro School District levied 23.9 mills for maintenance and operation and 3.0 mills for dedicated maintenance and operation?
 2. If there is a lawsuit, could the county be held accountable for the school district's not levying the tax?
3. How can we remedy this problem?
RESPONSE
With respect to your first question, it is unclear based upon the limited facts whether the millage apportionment you have recited fails to meet the uniform rate of tax requirement set forth in Amendment 74. It is in all likelihood consistent with Amendment 74 to credit against the 25-mill uniform rate of tax any maintenance and operation millages expressly dedicated to the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4). However, it is unclear whether a district could permissibly credit the expenses set forth in subsection (5) — viz., `[r]epaying revolving loans for any of the purposes previously listed.'" Moreover, assuming a millage to repay a revolving loan might not be credited against the uniform rate of tax, I believe a millage generally passed for "dedicated maintenance and operation" and not otherwise restricted to specified uses likewise might not be credited, regardless of whether the district uses the proceeds to retire revolving debt. Assuming at least 1.1 mill of tax is dedicated to one or more of the purposes set forth at A.C.A. §26-80-110(b)(1) through (4), I believe a court would conclude that the levy accords with the requirements of Amendment 74. If the millage is not so dedicated, given the confusing state of the law on this issue, I cannot opine how a court would rule. If county officials conclude they have failed to levy the full uniform rate of tax, I believe the county court, not the quorum court, might remedy the situation by directing the county clerk to correct the inadequate levy. A.C.A. § 14-14-904(b)(4). In my opinion, the answer to your second question is "no": the Code anticipates that any lawsuit to enforce compliance with Amendment 74 take the form of a mandamus action directly against noncomplying officials.See A.C.A. § 26-80-207. With respect to your third question, the simplest remedy for any deficiency would be for the county court to direct the county clerk to correct the levy pursuant to A.C.A. § 14-14-904(b)(4).
Question 1: Does the Quorum Court need to take any action since theMurfreesboro School District levied 23.9 mills for maintenance andoperation and 3.0 mills for dedicated maintenance and operation?
Before directly addressing the question of whether dedicated maintenance and operation millages might be credited against the 25-mill uniform rate of tax mandated by Amendment 74 for maintenance and operation of the schools, I will reproduce from the attached Ark. Op. Att'y Gen. No.2003-031 my general discussion of the county's constitutional duties:
 [R]egardless of what action the state might take, the above passage [from Lake View School District v. Huckabee, 351 Ark. 31, 91 S.W.3d 472
(2002)] is implicitly a charge to county officials, in the exercise of their constitutional duties as defined in Amendment 74, to compute and to levy a 25-mill property tax in accordance with constitutional principles — i.e., without granting any constitutionally impermissible credit for any such category as excess debt service millage. Subsection (b)(1) of Amendment 74 bluntly declares that "[t]here is established a uniform rate of ad valorem property tax of twenty-five mills" (emphasis added) — a pronouncement echoed verbatim at A.C.A. § 26-80-101(a). I have emphasized the verb in this language to stress that the voters, in adopting Amendment 74, themselves actually imposed the levy as a matter of constitutional law, leaving it up to county officials only to undertake such actions as are necessary to collect the amounts levied. Subsection (b)(3) of Amendment 74 and A.C.A. § 26-80-101(b) further dictate that "[t]he uniform rate of tax shall be assessed and collected in the same manner as other school property taxes" — i.e., by action of the collector following levy by the quorum court. See A.C.A. § 14-14-904(b).
 I am aware of the fact that A.C.A. § 6-14-114(4)(D) (Repl. 1999) currently provides for periodic voter approval of "[t]he total millage rate levied for all purposes in the school district" — a requirement that appears inconsistent with the proposition that Amendment 74 in itself levied the uniform rate of tax. I am also aware of the fact that, in accordance with this statute, the uniform rate of tax is normally submitted to the school district voters for their approval. See also Lake View, 351 Ark. at 89 (stating in dictum that "each school district is responsible for assessing [sic: `levying'] a uniform rate of 25 mills for maintenance-and-operation purposes"). However, to the extent this statute suggests that the voters could decline to levy the uniform rate of tax, I believe the statute is constitutionally suspect, since the voters have already levied the tax as a matter of constitutional law in adopting Amendment 74.[1]
 In my opinion, should the quorum court fail to levy the full uniform rate of tax prior to the deadline announced in Lake View,[2] its members would be subject to the penalties set forth in A.C.A. § 26-80-207, which provides:
 (a) All duties imposed by this subchapter and subchapter 1 of this chapter on all state and county officers are declared to be mandatory, and any officer who neglects, fails, or refuses to perform any such duty shall be subject to removal from office and liable on his official bond for such neglect, failure, or refusal.
 (b)(1) Upon the refusal or failure of any state officer to perform any duty imposed upon him under the provisions of this subchapter and subchapter 1 of this chapter, any citizen of the state may, and the Attorney General of the State of Arkansas shall, institute in the proper court mandamus proceedings to compel the state officer to perform his duties.
 (2) Upon the refusal or failure of any county officer to perform any duty imposed upon him under the provisions of this subchapter and subchapter 1 of this chapter, any citizen of the county may, and the prosecuting attorney of the district including such county shall, institute in the proper court mandamus proceedings to compel the county officer to perform his duties.
(First footnote in original.)
The issue underlying your question is whether mills levied for dedicated maintenance and operation of the schools can be credited against the 25-mill uniform rate of tax. I must respectfully disagree with your suggestion that "the law is clear that dedicated M O cannot be used to count for the 25 mls." As I noted in Opinion No. 2003-144:
 The Code sets forth the designated uses for dedicated maintenance and operation mills at A.C.A. § 26-80-110(b) and allows for a credit of these mills against the uniform rate of tax at A.C.A. § 16-80-204(18)(B). In Ark. Op. Att'y Gen. No. 2003-089 [attached], I opined that" although it is in all likelihood constitutional to credit against the uniform rate of tax millages devoted to the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4),[3] it is unclear whether a district could permissibly credit the expenses set forth in subsection (5) — viz., `[r]epaying revolving loans for any of the purposes previously listed.'" I will not here repeat the analysis that led me to these conclusions. In accordance with my previous opinion, I believe it would be appropriate for the Department to credit against the uniform rate of tax the millages used for the purposes set forth at A.C.A. § 26-80-110(b)(1) through (4). However, as I noted in my previous opinion, I am unable to opine whether a court would conclude that millages devoted to the purpose of repaying revolving loans might also be credited against the uniform rate of tax. Judicial clarification on this issue appears warranted.
Applying these conclusions to your specific question, I believe the need for remedial action by either the quorum court or some other county official may depend on whether the dedicated maintenance and operation tax millages levied in November are dedicated to one or more of the purposes set forth at A.C.A. §§ 26-80-110(b)(1) through (4), in which case I believe a court would conclude that they can be credited against the uniform rate of tax, or whether they might be devoted to repayment of revolving loans, in which case, notwithstanding the contrary suggestion in A.C.A. § 26-80-110(b)(5), I believe a court might decline to credit them against the uniform rate of tax. In my opinion, if at least 1.1 mills of the 3.0 mills levied for dedicated maintenance and operations are dedicated to any of the uses set forth at A.C.A. § 26-80-110(b)(1) through (4), the quorum court would in all likelihood be deemed in compliance with its obligation to levy at least 25 mills for maintenance and operation.[4] By contrast, if the dedicated millage might be used to service a revolving loan, I believe a court might question whether the millage can be credited against the uniform rate of tax.
Assuming that it is impermissible for a district to credit against the uniform rate of tax any millage dedicated to service a revolving loan — an assumption I am not inclined either to endorse or to reject, see Opinion No. 2003-089 — I believe a court would look to the ballot to determine whether a particular dedicated maintenance and operation millage might be credited against the uniform rate of tax. The court's focus, then, would not be on the actual use to which school officials intend to put the millage, but rather on the potential uses that the voters approved. I believe this conclusion is consistent with the court's reasoning in Lake View, in which the court offered the following as a basis for reversing a trial court's conclusion that excess debt service might be credited against the uniform rate of tax:
 In our view, the trial court assumes too much. It assumes . . . that taxpayers have, in effect, authorized by their votes that the excess be applied to maintenance and operation of the schools. Why taxpayers would "authorize" by implication that the excess be used for maintenance and operation and not for some other expense such as another capital expense is not explained by the court.
351 Ark. at 88. The focus in this passage is on what local authoritiesmight do with the funds based on the voters' authorization, not on whether local authorities intend to use the funds for maintenance and operation. The passage suggests that so long as the funds might be used for some purpose other than maintenance and operation, no credit applies. Extrapolating from this analysis, it would appear that if a ballot would permit using a dedicated maintenance and operation millage to repay a revolving loan — a purpose I am again only assuming for the sake of argument would preclude crediting the millage against the uniform rate of tax, see Opinion No. 2003-089 — then that millage would not qualify as a credit regardless of the actual purpose to which the funds will be put.
In reviewing various sample ballots listed on the Arkansas Department of Education's website, I noted that all of the samples proposed posing the issue of approving a dedicated maintenance and operation millage to the voters using the following language: "____ mills for dedicated maintenance and operations millage (Capital Outlay/Expenditures) dedicated for purposes authorized by law." In my opinion, applying the court's reasoning in Lake View, a court might deem this language inadequate to warrant crediting the millage against the uniform rate of tax because the millage might be used to service revolving debt. On the other hand, again merely assuming for argument's sake that debt service on a revolving loan does not warrant a credit, if the ballot specifically dedicates the proposed millage to a use recited in A.C.A. §26-80-110(b)(1) through (4), I believe the millage would qualify as a credit against the uniform rate of tax.
The question remains what remedial action would be warranted if the quorum court has, in fact, failed to levy the full uniform rate of tax pursuant to Amendment 74. In my opinion, the answer to this question is set forth at A.C.A. § 14-14-904(b), which provides:
 (1) Levy of Taxes and Making of Appropriations. The quorum court at its regular meeting in November of each year shall levy the county, municipal, and school taxes for the current year, and before the end of each fiscal year, the court shall make appropriations for the expenses of county government for the following year. The Director of the Assessment Coordination Division of the Arkansas Public Service Commission may authorize an extension of the date for levy of taxes of up to sixty (60) days upon application by the county judge and county clerk of any county for good cause shown resulting from reappraisal or rollback of taxes.
* * *
 (4) If a county court determines that the levy of taxes by the quorum court is incorrect due to clerical errors, scrivener's errors, or failure of a taxing entity to report the correct millage rate to the quorum court, the county court shall issue an order directing the county clerk to correct the error in order to correct the millage levy.
(Emphasis added.) As reflected in the foregoing discussion, the uniform rate of tax has already been "levied" as a matter of constitutional law by the adoption of Amendment 74. The quorum court in effect performs the purely ministerial act of again "levying" the uniform rate of tax in the course of levying other property taxes. Given the constitutional mandate levying the uniform rate of tax, I believe a taxing entity that reports a lower rate of tax to the quorum court of necessity will have reported incorrectly the applicable millage rate, thus triggering the remedial provisions of A.C.A. § 14-14-904(b). In the present case, then, if the county court[5] were to determine, whether by notice from the Department of Education or otherwise, that fewer than 1.1 mills of the 3.0 mills dedicated to maintenance and operation can be credited to the uniform rate of tax, he or she could remedy the situation pursuant to the statute by simply "directing the county clerk to correct the error in order to correct the millage levy."[6] I consider this remedy more appropriate than having the quorum court levy additional mills to compensate for any shortfall, since A.C.A. § 14-14-904(b) expressly directs that any levy of school taxes by the quorum court must occur in November.[7]
Question 2: If there is a lawsuit, could the county be held accountablefor the school district's not levying the tax?
In my opinion, the answer to this question is "no." As discussed in my response to your previous question, the appropriate course of action pursuant to A.C.A. § 26-80-207 would be for a citizen or prosecuting attorney to file a petition for a writ of mandamus against whatever officials have failed to levy an appropriate millage pursuant to Amendment 74.[8]
Question 3: How can we remedy this problem?
As reflected in my response to your first question, determining whether there even is a problem will probably entail analyzing the uses to which the dedicated maintenance and operation millage will be put. As I further discussed in my response to your first question, in the event a problem exists, I believe the remedy would be for the county court to direct the county clerk to correct the millage levy. See A.C.A. § 14-14-904(b)(4).
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosures
[1] My inquiries reveal that immediately after the adoption of Amendment 74, the quorum courts in seven Arkansas counties — Carroll, Craighead, Hempstead, Madison, Scott, Searcy and Independence — levied the uniform rate of tax without even submitting the matter to school district voters. In my opinion, such actions by the quorum courts are fully consistent with the mandate set forth in Amendment 74.
[2] The announced deadline was January 1, 2004.
[3] Section 26-80-110(b) of the Code provides:
 (b) Any funds received from the collection of a dedicated maintenance and operations tax shall only be used for the following purposes:
(1) Purchase of school buses;
 (2) Purchase of furniture or equipment to support the instructional program;
(3) Purchase of computer software;
(4) Renovation or repair of existing facilities; or
(5) Repaying revolving loans for any of the purposes previously listed.
[4] Having offered this conclusion, I should note that Act 28 of the 2d Extraordinary Session of 2003 enacted a new "Amendment 74 Enabling Act of 2003," to be codified as A.C.A. § 26-80-301 et seq. Subsection 26-80-302(7)(B) of this act will prohibit crediting any variety of dedicated maintenance and operation millage against the uniform rate of tax. Section 7 of Act 28 will further amend A.C.A. § 26-80-110 to provide that "[d]edicated maintenance and operation millage may not be used by a district to comply with the uniform rate of tax levy." Although this act was approved on December 31, 2003, it will not take effect until 90 days after the current legislative session adjourns sine die. Fulkerson v.Refunding Board, 201 Ark. 957, 147 S.W.2d 980 (1941). This rule stems from Amendment 7 to the Constitution of Arkansas, which gives the people "ninety days after the final adjournment of the session" to file referendum petitions.
I should further note that Senate Bill 73, which is currently pending in the legislature, would repeal the provisions of Act 28 and enact another "Amendment 74 Enabling Act of 2003," to be codified as A.C.A. § 26-80-401et seq. The proposed A.C.A. § 26-80-402(7)(B) would likewise preclude crediting any dedicated maintenance and operation millage against the uniform rate of tax. Section 9 of S.B. 73 further proposes amending A.C.A. § 26-80-110 to provide that "[d]edicated maintenance and operation millage may not be used by a district to comply with the uniform rate of tax levy."
Curiously, in their proposed amendment of A.C.A. § 26-80-110, both Act 28 and S.B. 73 authorize school districts to redesignate additional maintenance and operation millage exceeding the uniform rate of tax as designated maintenance and operation millage, which pursuant to A.C.A. §26-80-110(a)(3) in both its current and amended forms "may be considered part of the school district's uniform rate of tax." This provision, of course, is logically inconsistent, since it is a nonsequitur to suggest that redesignated millage exceeding the uniform rate of tax could be counted toward the uniform rate of tax. The provision further clearly conflicts with the blanket proscription expressed elsewhere in Act 28 and S.B. 73 against crediting designated maintenance and operation mills to the uniform rate of tax. My inquiries reveal that the sponsors of both Act 28 and S.B. 73 inadvertently failed to strike subsection (a)(3) from A.C.A. § 26-80-110. The sponsors of S.B. 73 are reportedly seeking to amend the bill to correct this oversight.
Given that none of the legislation or proposed legislation is currently in effect, I believe the conclusions set forth in the text of my opinion apply to your question. However, S.B. 73 contains an emergency clause and would consequently become immediately effective upon its approval by the governor.
[5] As one of my predecessors observed in discussing the respective roles of the county court and the county judge:
 Since the adoption of Amendment 55, the county court exercises fewer powers (former powers now being exercised either by the quorum court, or by the county judge in an executive capacity), but it clearly still exists, and consists of the county judge, wearing a judicial hat. See again, A.C.A. § 14-14-1105.
Ark. Op. Att'y Gen. No. 97-181.
[6] In this regard, I will note that section 5 of S.B. 73 proposes adding to A.C.A. § 14-14-904(b) the following subsection (5):
 If a determination is made under this subchapter, or Title 26, Chapter 80, subchapter 1, that the taxes levied by the quorum court are out of compliance with Arkansas Constitution, Article 14, § 3, as amended by Arkansas Constitution, Amendments 11, 40, and 74, then upon notice from the Director of the Department of Education the county court shall immediately issue an order directing the county clerk to change the millage levy to bring the taxes levied into compliance with Arkansas Constitution, Article 14, § 3, as amended by Arkansas Constitution, Amendments 11, 40, and 74.
[7] Although it seems somewhat odd, it may be that the only permissible exception to levying on this November date would be pursuant to the mandamus proceeding set forth at A.C.A. § 26-80-207.
[8] As you may know, a lawsuit alleging failure to levy the full uniform rate of tax in the Fountain Lake School District is currently pending as Garland County Circuit Court No. CV 2003-1272 II. Although this action is captioned as one for declaratory judgment, the relief sought by the Fountain Lake School District is an injunction that would amount to the equivalent of a mandamus against county officials who have allegedly failed to levy the uniform rate of tax.